UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAHAA KALASHO,

        Plaintiff,        CIVIL ACTION NO. 02-CV-71854-DT

vs.        DISTRICT JUDGE DENISE PAGE HOOD

        MAGISTRATE JUDGE DONALD A. SCHEER

WILLIAM MARTIN, KURT JONES,
JIMMY STEGALL, DENNIS STRAUB,
GERALD HOFBAUER, LOUIS MYERS,
JACK HUTCHINS, WANDA MOORE,
GREG SMOYER, LELAND PUTNAM,
BILL AALTO, JENNETTE EVANS,
DENNIS TOWERS, and DALE FELDPAUSCH,

        Defendants,
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: Defendants' Second Renewed Motion[1] for Summary Judgment in this prisoner civil rights case should be GRANTED, as Plaintiff has failed to establish any violations of his federally secured constitutional rights.

        \*    \*    \*

Plaintiff, while a state prisoner at the Marquette Branch Prison (MBP), in Marquette, Michigan filed the instant

---

[1] Defendants filed a Renewed Motion for Summary Judgment on October 15, 2003 (Docket #57), which was not addressed by the Court. Defendants integrated all the arguments found in the Renewed Motion for Summary Judgment into their present Second Renewed Motion for Summary Judgment.

Complaint, pursuant to 42 U.S.C. § 1983, on May 9, 2002, against the above named Defendants, who are employed by the Michigan Department of Corrections (MDOC). In his Complaint, Plaintiff alleged that the Defendants engaged in a conspiracy to punish him for exercising his First Amendment right to file lawsuits and grievances against MDOC prison officials. Claiming violations of his federal constitutional rights, Plaintiff sought declaratory and injunctive relief as well as unspecified damages.

Defendants filed a Motion to Dismiss on September 26, 2002, based upon Plaintiff's failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e. Alternatively, Defendants Jones, Stegall, Myers, Hutchins, Moore and Evans asserted that any claims against them were time-barred as beyond the three year statute of limitations. Plaintiff filed a reply to the Motion to Dismiss on October 31, 2002, arguing that he had exhausted his administrative remedies and that his claims were not time barred.

On September 30, 2003, the Court issued an Order dismissing the complaint against Defendants Jones, Feldpausch, Towers, Putnam, Smoyer and Straub because Plaintiff had not exhausted his claims against these MDOC prison officials. The Court determined, however, that Plaintiff had exhausted his

administrative remedies against Defendants Martin, Stegall, Hutchins, Myers, Evans, Moore, Hofbauer and Aalto. Plaintiff was allowed to proceed against these defendants and given a period of discovery to help prepare his case.

After a rather long period of discovery was completed,[1] Defendants' filed a Renewed Motion for Summary Judgment on February 7, 2005, based upon a failure to state a claim and qualified immunity. In a typewritten reply, dated February 22, 2005, Plaintiff maintained that Defendants had failed to comply with his discovery requests. As a result, he elected not to address the merits of Defendants' Renewed Motion for Summary Judgment.

ALLEGATIONS IN COMPLAINT

From November 1998 through July 2001, Plaintiff filed in excess of 20 grievances relating to problems he allegedly experienced while incarcerated at the Macomb County Facility (MRF), the G. Robert Cotton Correctional Facility (JCF) and MBP. The issues included alleged tampering with Plaintiff's mail, refusal to copy legal documents, and denial of access to library

---

[1] Plaintiff filed a Memorandum of Compliance With Discovery, as requested by the Court, on January 20, 2005 (Docket #86).

services. He also claimed that he was the victim of harassment, retaliation and entrapment.

Plaintiff claims that he was retaliated against in three respects: (1) he allegedly was transferred from facility to facility, and subjected to administrative segregation, because he had filed numerous grievances against prison officials; (2) he was entrapped by being forced to engage in a smuggling operation (smuggling unauthorized computer equipment and drugs) as a retaliatory measure; and (3) he was wrongfully categorized as an escape risk, and was frequently segregated from the general prison population, and was otherwise treated differently than similarly situated inmates.

Plaintiff also maintains that he was denied access to the courts by the deprivation of word processing and research resources necessary to formulate any pleadings with the court. Finally, Plaintiff states that he was intentionally subjected to environmental tobacco smoke, which exacerbated his health problems. Plaintiff sought the removal of the escape designation from all MDOC files and to be transferred to a lower security level without further reprisals. He also wanted to be placed in a smoke free environment, and to have his word processor replaced with a newer model.

## DISCUSSION AND ANALYSIS

### SUPERVISORY RESPONSIBILITY

To state a claim for monetary damages under § 1983, a claimant must aver some specific, personal wrongdoing on the part of the individual defendant. Theories of vicarious liability or respondeat superior are not sufficient. Rizzo v. Goode, 423 U.S. 362, 376 (1976). In addition, it is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause. Whitley v. Albers, 475 U.S. 312, 319 (1986).

Former MDOC Director Martin and wardens Stegall and Hofbauer, were apparently sued because of their respective positions of authority and supervisory responsibilities within the MDOC. However, the mere fact that a supervisory person is in a position of authority does not allow imposition of liability against him or her. A supervising official's failure to supervise, control or train an offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." Poe v. Hayden, 853 F.2d 418, 429 (6th Cir. 1988). To the extent Plaintiff complains about a failure to respond to his grievances, the general rule is that a combination of knowledge

5

of a prisoner's grievances and failure to respond to or remedy the complaints is insufficient to impose liability upon supervisory personnel under § 1983. Id.

Defendants Martin, Stegall and Hofbauer were merely part of the MDOC administration during the relevant time, and there is no evidence that any "policy" personally promulgated by them had anything to do with Plaintiff's treatment. Moreover, Plaintiff has not shown that these Defendants had "actual knowledge of a breakdown in the proper workings of the department." See Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992). Absent a showing that they were personally or directly involved, Defendants Martin, Stegall and Hofbauer should not be held liable. Accordingly, the claims against them should be dismissed regardless of the constitutional sufficiency of Plaintiff's actual treatment.

## CLAIM OF RETALIATION

There are two categories of retaliation claims--general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific constitutional rights. In Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1989) the Sixth Circuit clarified the elements of each

category and supplanted previous cases that had blurred the lines between the two. General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment. To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." Id. at 387. In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate while holding a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him. See Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right. In such cases, an inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in

7

part, by the inmate's protected conduct. Thaddeus-X, 175 F.3d at 394-395. Plaintiff has the burden of proving all three elements. He must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

Even if it is assumed, without deciding, that Plaintiff satisfied the first two elements listed above, he has failed to allege sufficient facts that establish the third. He has done nothing more than simply allege retaliation, without establishing a causal connection. See Thaddeus-X, 175 F.3d at 399-400. While an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf, Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996), this right is protected only if the grievances are not frivolous. Lewis v. Casey, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

## RETALIATION IN THE FORM OF SEGREGATION

Plaintiff alleged that MRF Defendants Hutchins, Moore, Myers and Evans retaliated against him in April 1999, for filing previous grievances by falsely accusing him of being involved in an escape plot, and then segregating him from the general prison population (Complaint p.7). He asserts that he remained in administrative segregation longer than other "similarly situated" prisoners, who were allegedly released back into the general population (Complaint p. 13).

Contrary to Plaintiff's assertion, the cell transfer to administrative segregation was not retaliatory, but was intended to separate him from the general prison population during the course of the investigation (See affidavit of Defendant Hutchins attached as Exhibit F to Defendants' Motion for Summary Judgment). The Supreme Court has held that an inmate may be placed in "nonpunitive" (administrative) segregation to safeguard institutional security or to conduct an investigation of unresolved misconduct charges without invoking the Wolff[2] due process procedures. Hewitt v. Helms, 459 U.S. 460, 473 (1983); Woodson v. Lack, 865 F.2d 107, 109 (6th Cir. 1989). Defendant

---

[2] Wolff v. McDonnell, 418 U.S. 539, 563-566 (1974).

9

Hutchins' decision to place Plaintiff in administrative segregation, pending the completion of an investigation into the alleged escape plot, does not give rise to a cause of action.

Plaintiff also suggests that his equal protection rights were violated because other prisoners in administrative segregation allegedly received preferential conditions of confinement. To establish a violation of the Equal Protection Clause, an inmate must show that the prison officials purposefully discriminated against him. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977); Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995). Such discriminatory purpose must be a motivating factor in the actions of defendants. Arlington Heights, at 265-266.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court determined that prison regulations concerning confinement of an inmate did not create a liberty interest. In making its decision, the Court did not rely on the language of the regulations for mandatory terminology and substantive predicates. Id. at 485; cf. Hewitt v. Helms, 459 U.S. 460, 471-72 (1983). Rather, the Court focused on the particular restraint imposed and held that it "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty

10

interest." Sandin, Id. at 485. Based on the Supreme Court's holding in Sandin, I am persuaded that there is no liberty interest at issue entitling Plaintiff to procedural protection as a result of his extended administrative segregation status. Moreover, the special security needed to supervise those prisoners in higher levels of custody will necessarily result in fewer privileges for them than those normally provided to general population inmates. See Allgood v. Morris, 777 F.2d 1250, 1256 (4th Cir. 1984).

A prisoner has no right to be classified to any particular security level, Olim v. Wakinekona, 461 U.S. 238, 245 (1983), or remain free of administrative segregation. Mackey v. Dyke, 111 F.3d 460, 462 (6th Cir. 1997). Notwithstanding the discomfort Plaintiff may have experienced as a normal consequence of his lockdown status, the undersigned is not persuaded that his due process (liberty interest) rights were violated.

### RETALIATION IN THE FORM OF CONFISCATING A TYPEWRITER

After Plaintiff was transferred from MRF to JCF on April 9, 1999, he admittedly joined two other prisoners in an effort to smuggle into the prison an unauthorized typewriter. Plaintiff stated that he paid the two prisoners a sum of money

($500) for their help in securing the typewriter (Complaint pp. 7-10). The typewriter was later seized during a search of claimant's cell on July 11, 1999. After an administrative hearing, Plaintiff was found guilty of major misconduct, and his security classification was raised from level 2 to level 5 based on the conviction (Complaint p. 11).

Plaintiff now claims that JCF officials encouraged the other two prisoners to smuggle the typewriter into the prison in an attempt to entrap him into committing major misconduct. He asserts that this was done in retaliation for filing grievances against them for their alleged interference with a previous attempt to purchase different typewriter. Contrary to Plaintiff's uncorroborated assertion that JCF officials tried to entrap him, Defendants provided ample documentation demonstrating that Plaintiff willingly attempted to violate prison rules in order to obtain a typewriter that was not on the prison's approved list (See affidavits and exhibits I, L and O attached to Defendants' Motion for Summary Judgment).

Plaintiff's allegations relating to the search of his cell for the contraband typewriter, even if accepted as true, do not give rise to a federally cognizable Fourth Amendment claim. In <u>Hudson v. Palmer</u>, 468 U.S. 517, 536 (1984) the Supreme

Court held that prisoners have no legitimate expectation of privacy in, and the Fourth Amendment's prohibition against unreasonable searches does not apply to, prison cells.

There is no evidence that JCF officials seized the typewriter to prevent Plaintiff from preparing court pleadings or other court related documents. They were simply enforcing a prison regulation that all allowable property be purchased from approved vendors through the institutional ordering process (See Exhibit D-6 attached to Defendants' Motion for Summary Judgment). Reasonable control over the flow of property items into a penal institution is an essential element of security. There is no evidence that Mr. Kalasho was deprived of the legitimate avenues available to other prisoners for obtaining the means to prepare court documents. Plaintiff has failed to prove that JCF defendants were engaging in retaliation when they confiscated his illegal typewriter.

### RETALIATION IN THE FORM OF PRISON TRANSFER

Plaintiff asserts that his security classification was increased after his transfer to from JCF to Marquette Branch Prison (MBP) in August 1999, allegedly in retaliation for filing a grievance against Defendant Aalto. He claimed that Defendant

Aalto had incorrectly filled out a Security Classification Screen Review upon his transfer to MBP that increased his security level (Complaint pp 12-13). Plaintiff also maintained that he was subjected to second hand cigarette smoke at MBP, which allegedly aggravated his breathing problems.

As mentioned previously, a prisoner has no independent constitutional right to confinement in a particular place, Olim v. Wakinekona, 461 U.S. at 245, and has no right to be transferred to a prison facility of his choice. Hewitt v. Helms, 459 U.S. at 468 (transfer of an inmate to less amendable and more restrictive quarters is well within the terms of confinement ordinarily contemplated by a prison sentence); Newell v. Brown, 981 F.2d 880 (6th Cir. 1992) (MDOC procedures for prisoner security classification did not create a constitutionally protected liberty interest). According to documentation attached to Defendants' Motion for Summary Judgment, Plaintiff was actually given a Level 5 prisoner status after his transfer to MBP because he had been convicted of three major misconducts while at JCF. Plaintiff had been convicted, following an administrative hearing, of possessing dangerous contraband, including a cell phone and charger. He was also convicted of possessing a knife and a $100 bill (See affidavit of Defendant

14

Aalto and misconduct reports attached as exhibit M to Defendants's Motion for Summary Judgment).

Due process does not require that he be given a hearing before a change is ordered, even if such action might result in confinement under less desirable or favorable conditions. Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976). Plaintiff has identified no state created, protected liberty interest entitling him to a hearing to challenge his security classification or transfer to another correctional facility. Hewitt v. Helms, 459 U.S. 460, 466 (1983).

Even if there were a due process right to a hearing before Plaintiff was classified to a higher custody, in damage suits for deprivation of liberty without procedural due process under § 1983, the claimant has the burden of pleading and proving the inadequacy of state remedies to redress the alleged wrong. Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983); Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir. 1985) (en banc); Wells v. Brown, 891 F.2d 591, fn. 1 (6th Cir. 1989). This Plaintiff has not done so. All Plaintiff has presented is what he says Defendants Aalto, Hutchins, Moore, Myers and Evans did, coupled with the fact that he had previously filed a grievance against

15

them. From that he jumps to the conclusion that what the Defendants did was <u>because</u> of his prior litigation. However, speculation is no substitute for hard evidence. Since Plaintiff has failed to show that his filing of prison grievances was a substantial or motivating factor behind his treatment, the undersigned is not persuaded that Plaintiff has overcome Defendants respective affidavits of good faith actions.

Plaintiff failed to show that retaliation for his having filed grievances against Defendants Aalto, Hutchins, Moore, Myers and Evans was such an abuse of governmental authority as to shock the conscience, or that he suffered a remediable harm. It is recommended that the claim of retaliation against these MDOC officials be dismissed.

## SECOND HAND TOBACCO SMOKE

In order for a claim based upon a violation of the Eighth Amendment to survive a motion for summary disposition, the Plaintiff must claim that the conditions deprived him of the "minimum civilized measures of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). The cruel and unusual punishment clause condemns only that punishment which is "barbarous" or "shocking to the conscience," <u>Duggan v. Brooks</u>,

818 F.2d 513, 517 (6th Cir. 1987). Furthermore, prison conditions that subject an inmate to unnecessary and wanton infliction of pain must be "totally without penological justification" in order to violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103 (1976).

Using these standards, the court in Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982) held that the placement of an inmate into a hot and dirty cell without functioning plumbing was not sufficient to state a claim of constitutional dimension. The Holloway court reasoned that a prison sentence did not guarantee against a life without occasional inconveniences. Similarly, another court has ruled that as long as poor prison conditions persist for just a limited period of time, it cannot be said that the conditions amounted to cruel and unusual punishment. Evans v. Fogg, 466 F.Supp. 949, 950 (S.D. N.Y. 1979).

There is no evidence that the discomfort Plaintiff may have experienced during the time he was subject to second hand tobacco smoke while at MBP rose to the level of a constitutional violation. Plaintiff did not allege that he suffered any physical harm as a result of his treatment. Plaintiff has offered no medical evidence to support his assertion that his

17

health was jeopardized.

Even if MBP Hofbauer and Aalto were found to be personally involved, Plaintiff still has not established that these prison officials were deliberately indifferent to a serious medical need. The MDOC now has a general no-smoking policy that disciplines prisoners for violating the regulation. I am not persuaded that Plaintiff's limited exposure to second hand smoke while at MBP contravened any federal constitutional guarantees.

## REQUEST FOR INJUNCTIVE RELIEF

Plaintiff requests that the escape designation be removed from MDOC files, and he seeks a transfer to a Level II prison facility (Complaint p.16). Since Plaintiff was found guilty of possession of contraband that could have facilitated an escape, he is not entitled to have his security level lowered or his escape designation removed. Any other claim for injunctive relief is moot in light of Plaintiff's transfer out of the MBP in February 2005. When a Plaintiff is no longer incarcerated in the institution where the alleged violations occurred, injunctive relief is no longer needed and therefore must be denied as moot. See Washington v. James, 782 F.2d 1134, 1137 (2d Cir. 1986) (noting that prisoner cannot maintain Section 1983 action for

injunctive relief when he is no longer incarcerated where alleged violations occurred). Plaintiff is now incarcerated at the Baraga Correctional Facility in Baraga, Michigan. Injunctive and declaratory relief is not available to Plaintiff for claims involving any other prison.

For all of the foregoing reasons, it is accordingly recommended that Defendants' Motion for Summary Judgment be granted and the instant case dismissed. The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Hood's acceptance thereof is waived.

*Donald C. Scheer*
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: 3/25/05

cc: Honorable Denise Page Hood
    Bahaa Kalasho
    Christine Campbell